*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF EVANIA BARBARA
SCHOBLOHER, by KIMBERLY M. LUBINSKI,
Personal Representative,

UNPUBLISHED
June 13, 2019

Plaintiff-Appellant,

v

No. 342820
Macomb Circuit Court
LC No. 2016-003266-NI

CHRISTOPHER JOHN CIESLAK and
CHRISTOPHERS COMPLETE
MAINTENANCE, INC.,

Defendants-Appellees.

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants Christopher John Cieslak (Cieslak) and Christopher's Complete Maintenance, Inc. (CCM) under MCR 2.116(C)(10). We affirm in part and reverse in part, and remand for further proceedings.

I. PERTINENT FACTS AND PROCEDURAL HISTORY

On the afternoon of April 21, 2016, as Cieslak was driving a vehicle owned by CCM northbound on Hayes Road in Eastpointe, Michigan, he saw plaintiff's decedent, Evania Schobloher (Schobloher) and her daughter begin to cross Hayes Road.[1] They were not using a crosswalk. Cieslak testified at his deposition that he believed Schobloher and her daughter would wait for him to pass before completing their crossing. He further testified that Schobloher

---

[1] Schobloher and her daughter lived on Hayes Road, and apparently were returning home from a nearby store.

-1-

walked in front of his vehicle and that he was unable to avoid her. In the ensuing collision, Schobloher was killed.

Cieslak denied ever crossing the centerline of Hayes Road. At his deposition, he testified that he was driving somewhere between 15 and 25 miles per hour (mph) when he hit Schobloher; however, Officer Alex Mikulec of the Eastpointe Police Department testified at his deposition that Cieslak told him that he was driving between 15 and 20 mph, while Officer Joshua Ignace of the Eastpointe Police Department testified at his deposition that Cieslak told him that he was driving between 25 and 30 mph. Cieslak testified that he had prescription glasses, but that he was not required by the State of Michigan to wear them while driving; Cieslak was not wearing them on the day of the accident.

Bretton Hudson was driving southbound on Hayes Road when the accident occurred. He testified at his deposition that he saw through his passenger side mirror that Schobloher and her daughter had begun to cross Hayes Road, and that they stopped while in the road; Hudson assumed they stopped because they saw Cieslak's vehicle approaching. Hudson testified that Schobloher raised her hand in a motion that Hudson assumed was meant to alert Cieslak to her presence. Hudson further testified that Cieslak struck Schobloher with his vehicle while she was standing in "the exact middle" of the road. However, Hudson also stated that he did not observe anything that led him to believe that Cieslak was driving recklessly.

Officer Ignace noted that Cieslak's vehicle was dented "just above" the headlight on the driver side of the vehicle, and that the vehicle was otherwise in good condition. Officer Ignace testified at his deposition that Cieslak had informed him that he had had several drunk driving convictions and had been issued a restricted license that permitted him only to drive to and from work. Office Joseph Schoof of the Warren Police Department performed field sobriety tests and a preliminary breath test on Cieslak, and found no evidence of intoxication. Cieslak testified at his deposition that all of his drunk driving offenses had occurred more than 10 years before the deposition date, and that he had chosen voluntarily to continue possessing a restricted license to ensure that he will "never [ ] be able to drink and drive again." Officer Ignace testified to his opinion that Schobloher was solely at fault for the accident, and testified that the prosecutor's office had decided not to charge Cieslak criminally.

Plaintiff filed a complaint against defendants in September 2016, alleging that Cieslak had operated his vehicle in a negligent, careless, and reckless manner causing Schobloher's death, and that CCM was vicariously liable for the actions of its employee. Plaintiff later amended its complaint to add a claim of negligent entrustment against CCM. After discovery, defendants filed a motion for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that Schobloher was more than 50% at fault for the accident, that plaintiff had failed to show that a genuine issue of material fact existed regarding Cieslak's negligence, and that plaintiff had failed to show that Cieslak was an incompetent driver to support its negligent entrustment claim. After a hearing, the trial court granted defendants' motion for summary disposition, stating that the only eyewitness saw the accident through his side mirror and "indicate[d] that there was no inappropriate action on the part of [ ] defendant [Cieslak] in this case." The trial court stated that although Hudson testified that Schobloher "began to raise her hand and tried to stop," Schobloher nonetheless "appears to have been [sic] walked in front of the vehicle, and for a jury to consider anything else would be total

speculation . . . ." The court also stated that it was "total speculation whether [Schobloher] entered [Cieslak's] lane or was somewhere else" and that there was "nothing to indicate that [Cieslak] violated any of the rules of the road." The trial court stated that it was granting defendants' motion for summary disposition and that "there is no factual basis that can be presented other than speculation under these circumstances that would warrant a determination that [Cieslak] in any way violated the rules of the road or was negligent."

The trial court entered an order granting defendants' motion for summary disposition for the reasons stated on the record. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (citation omitted). There is a genuine issue of material fact "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Id*. (citation omitted). The trial court may not "weigh the evidence or make determinations of credibility when deciding a motion for summary disposition." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 480; 776 NW2d 398 (2009). We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010).

## III. ANALYSIS

Plaintiff argues that the trial court erred by granting defendants' motion for summary disposition under MCR 2.116(C)(10), because there were genuine issues of material fact regarding whether Cieslak was driving negligently when he hit and killed Schobloher while she was crossing Hayes Road outside of the designated crosswalk. We agree.

"Michigan law imposes on all motorists a general duty to operate their vehicles in a reasonably prudent manner." *Sponkowski v Ingham Co Road Com'n*, 152 Mich App 123, 128; 393 NW2d 579 (1986). Even though a motorist does not have to guard against all conceivable results of his actions, the motorist must exercise reasonable care to avoid the foreseeable results of his actions. *Id*. "In addition, the determination of whether a particular harm is foreseeable is an issue for the trier of fact in deciding if the defendant has been negligent." *Id*.

In addition to the general duty imposed by Michigan law, MCL 257.627(1), MCL 257.627(16), and MCL 257.628(9) impose statutory duties on drivers. MCL 256.627(1) provides:

> A person operating a vehicle on a highway shall operate that vehicle at a
> careful and prudent speed not greater than nor less than is reasonable and proper,

having due regard to the traffic, surface, and width of the highway and of any other condition existing at the time. A person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead. A violation of this subsection shall be known and may be referred to as a violation of the basic speed law or "VBSL".

This duty has been referred to as the "assured clear distance ahead rule." *Cole v Barber*, 353 Mich 427, 431; 91 NW2d 848 (1958). Essentially, this rule provides that "a driver shall not operate his vehicle so fast that he cannot bring it to a complete stop within that distance ahead of him in which he can clearly perceive any object that might appear in his path." *Id*.

If a motorist drives faster than his perception and braking ability safely permit him to do, and an accident results because of it, he is negligent as a matter of law. Conversely, a motorist is not necessarily negligent as a matter of law if another vehicle or other moving object suddenly intersects his lane of travel or line of vision at some intermediate point within his assured clear distance ahead. In such a case his negligence or lack of it are properly questions of fact for the jury to determine. [*Id*.]

Further, MCL 257.627(16) and MCL 257.628 state that a driver who violates an established speed limit "is responsible for a civil infraction." Evidence that a party violated a motor vehicle statute is evidence on which a jury may infer negligence. See *Gould v Atwell*, 205 Mich App 154, 160; 17 NW2d 283 (1994).

Officer Ignace testified that Cieslak told him at the scene of the accident that he had been driving between 25 and 30 mph when the accident occurred, which is in excess of the 25 mph speed limit for Hayes Road. Although Cieslak told Officer Mikulec a lower numerical range, and testified to a lower range at his own deposition, we must at this juncture consider the evidence in the light most favorable to the nonmoving party, *Auto-Owners Ins Co*, 322 Mich App at 224. Officer Ignace's testimony at least creates a material question of fact regarding whether Cieslak was speeding at the time of the accident, and thus was in violation of MCL 257.627(16) and MCL 257.628, which would permit the jury to infer that he was driving negligently. See *Gould*, 205 Mich App at 160.[2]

Further, although Cieslak argues that Schobloher's act of walking in front of his car constituted a sudden emergency, the "sudden emergency" doctrine obviates the presumption of negligence that arises when a vehicle "rear ends" another vehicle headed in the same direction. See MCL 257.402(1); see also *White v Taylor Distrib Co, Inc*, 482 Mich 136, 139-140; 753

---

[2] A material issue of fact also exists regarding whether Cieslak committed a civil infraction by violating Mich. Admin. Code, R 28.716 ("[E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian on any roadway, shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person on a roadway.").

NW2d 591 (2008). Here, Cieslak struck a pedestrian in the roadway; there is no equivalent statute to MCL 257.402 that provides that a presumption of negligence (against the pedestrian) arises in that circumstance.

Moreover, Cieslak testified that he saw Schobloher and her daughter walking across Hayes Road before he hit Schobloher, but assumed that Schobloher and her daughter would wait for him to pass before they continued to walk across the road. Hudson described Schobloher as standing still in the "exact middle" of the road, and did not testify that she stepped into Cieslak's lane. Even if Schobloher did step in front of Cieslak's vehicle, and even if the sudden emergency doctrine applied, we cannot say as a matter of law that the resulting emergency was "totally unexpected." See *White*, 482 Mich at 139-140; see also *Vander Laan v Miedema*, 385 Mich 226, 232; 188 NW2d 564 (1971) (stating that "it is essential that the potential peril had not been in clearview for any significant length of time, and was totally unexpected"). We conclude that the sudden emergency doctrine has no applicability to this case.

Plaintiff also argues that the jury could find Cieslak negligent for failing to wear his glasses while driving. Cieslak testified that while he does wear glasses to improve his distance vision, he is not required to wear them while driving. On the day of the accident, Cieslak was not wearing his glasses. Although the State of Michigan, at the time Cieslak last renewed his license, did not determine that he was required to wear his glasses to operate his vehicle, the mere fact that Cieslak's license was issued without a corrective lens restriction under Mich Admin Code R 257.2 does not by necessity mean that a reasonably prudent person would have felt free not to wear his or her glasses on that particular day. Nonetheless, we agree with defendants that plaintiff has not provided any documentary evidence in support of the conclusion either that Cieslak was negligent by not wearing his glasses, or that his lack of vision correction contributed to the accident; in fact, Cieslak testified to having seen Schobloher and her daughter with sufficient time for him to decide that she was granting him the right of way, not that he did not see her in the road until it was too late. We conclude that these are factors that the jury should be free to consider in evaluating whether Cieslak was negligent.

Plaintiff further argues that the jury could infer from Hudson's testimony and the physical evidence that Cieslak's vehicle crossed the centerline when it hit Schobloher. We agree that a genuine issue of material fact exists on this point. Hudson testified that Schobloher was standing in the "exact middle" of the road when she was struck. A jury could infer from Hudson's statement that Schobloher was standing on the centerline of the road when she was hit, meaning that Cieslak's vehicle must have crossed over the centerline in order to hit Schobloher. Police reports showed that Cieslak's vehicle was dented after the impact with Schobloher just above the driver side headlight. A jury could infer that the vehicle would have had to at least partially cross the centerline in order to strike Schobloher with that area of its front end.

Cieslak denied crossing the centerline, but a jury could determine that Cieslak's testimony is not credible and that Hudson's testimony is credible. Of course, the jury could also determine the opposite. It is for this reason that questions of credibility are for the jury to decide, and a court may not make credibility determinations when deciding a motion for summary disposition. *Innovative Foster Care, Inc*, 285 Mich App at 480.

In sum, we conclude that the trial court erred by concluding that there were no genuine issues of material fact concerning whether Cieslak acted negligently and whether any such negligence caused or contributed to the collision with Schobloher.

Defendants further argue, however, that even if there are genuine issues of material fact concerning Cieslak's negligence, this Court should nonetheless affirm the trial court's order granting summary disposition in favor of defendants, because plaintiff's recovery is barred as a matter of law under MCL 500.3135(2)(b) because Schobloher was more that 50% at fault for the accident. We disagree.

MCL 500.3135(2)(b) provides that "damages shall not be assessed in favor of a party who is more than 50% at fault."

> The standards for determining the comparative negligence of a plaintiff are the same as those of a defendant—the jury must consider the nature of the conduct and its causal relationship to the damages—and the question is one for the jury unless all reasonable minds could not differ or because of some ascertainable public policy consideration. [*Laier v Kitchen*, 266 Mich App 482, 496; 702 NW2d 199 (2005).]

Defendants argue that Schobloher violated MCL 257.655 and MCL 257.613 when she crossed Hayes Road outside of the marked crosswalk. MCL 257.655(1) states: "Where sidewalks are provided, a pedestrian shall not walk upon the main traveled portion of the highway. Where sidewalks are not provided, pedestrians shall, when practicable, walk on the left side of the highway facing traffic which passes nearest." MCL 257.613 describes the circumstances under which a pedestrian may cross the road in accordance with regular traffic-control signals or special pedestrian control signals. Individuals who violate either MCL 257.655 or MCL 257.613 are "responsible for a civil infraction." As stated earlier, a jury may infer negligence from the violation of a motor vehicle statute.

It is undisputed that on the day of the accident Schobloher and her daughter were not using a crosswalk, despite the presence of one relatively near where they crossed. Thus, there arguably is evidence that Schobloher may have violated MCL 257.655(1) when she "walk[ed] upon the main traveled portion of the highway," even though a crosswalk was available for her use. However, because there was no evidence that Schobloher was crossing a portion of the road where either regular traffic-control signals or special pedestrian control signals were located, MCL 257.613 is not applicable.[3] Nonetheless, if the jury found that Schobloher violated MCL 257.655, then it could infer that she was negligent, and conceivably could even conclude that she was more than 50% at fault for the accident. We, however, cannot make that conclusion as a matter of law.

---

[3] For the same reason, Mich. Admin. Code, R 28.709 ("Where traffic-control signals are in operation, pedestrians shall not cross the roadway except in a marked crosswalk.") is not applicable.

We do not believe under the circumstances presented that the fault for the accident can be so clearly attributed to one party or the other that reasonable minds could not differ. *Laier*, 266 Mich App at 496. In cases like this, where there is evidence that both parties may have acted negligently, it is for the jury to apportion fault. *Id*. Therefore, we decline to affirm the trial court's order on the ground that Schobloher was precluded, as a matter of law, from recovery under MCL 500.3135(2)(b).

Defendants also argue that plaintiff failed to establish the requisite elements to support its claim of negligent entrustment. Plaintiff does not argue on appeal that the court erroneously granted summary disposition in favor of CCM on the negligent entrustment claim. This Court will not consider the issue because "[a] party who fails to brief the merits of an alleged error has abandoned the issue on appeal." *Villadsen v Mason Co Road Comm'n*, 268 Mich App 287, 303; 706 NW2d 897 (2005), aff'd on other grounds 475 Mich 857 (2006). We therefore affirm the trial court's grant of summary disposition on plaintiff's negligent entrustment claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle